## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

TINA ARENSDORF,                                )     Case No. _____
                                               )
              Plaintiff,                       )
                                               )
      v.                               )     COMPLAINT AND DEMAND
                                               )     FOR JURY TRIAL
WEST PARK TOWNHOMES, L.L.C.    )
d/b/a EXCEL DEVELOPMENT GROUP,)
                                               )
          Defendant.                       )

Plaintiff, Tina Arensdorf ("Arensdorf"), for her Complaint against Defendant, states and alleges as follows:

### GENERAL ALLEGATIONS

1.      Plaintiff Arensdorf is an individual residing in North Platte, Lincoln County, Nebraska.

2.      Defendant, West Park Townhomes, L.L.C. d/b/a Excel Development Group ("Excel Development Group"), is a Nebraska limited liability company having its principal place of business in Lincoln, Nebraska.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 29 U.S.C. §216(b), and 28 U.S.C. §1367(a).

4.      Arensdorf timely filed discrimination charges against Excel Development Group with the Nebraska Equal Opportunity Commission ("NEOC") as well as with the Equal Employment Opportunity Commission ("EEOC"). On January 15, 2008, a Notice of Right to Sue letter was issued by the EEOC as to Arensdorf's charge of discrimination

against Excel Development Group.  A copy of the EEOC's Notice is attached as Exhibit "A" and incorporated by reference.  Arensdorf has filed suit within 90 days of the NEOC's Commission Determination.  Arensdorf has satisfied all jurisdictional and administrative prerequisites to the filing of this Complaint.

5.      Venue is proper pursuant to 28 U.S.C. §1391(b).  This is the judicial district where a substantial part of the events giving rise to the claims occurred.

BACKGROUND

6.      Excel Development Group is a corporation which provides development and management services in senior retirement and assisted living communities and affordable housing, including West Park Townhomes in North Platte, Nebraska.

7.      On November 8, 2006, Arensdorf went to work for Excel Development Group as a resident manager at the West Park Townhomes in North Platte, Nebraska.  A copy of the Contract for Services entered into between Arensdorf and Excel Development Group is attached as Exhibit "B" and incorporated by reference.

8.      During the time period of November 8, 2006 to July 17, 2007, on which date Excel Development Group terminated Arensdorf's employment, Arensdorf served as Excel Development Group's live-in, on-site emergency contact person for the residents of West Park Townhomes.

9.      Under the Contract for Services Agreement, Arensdorf's responsibilities as resident manager included, but were not limited to, maintaining regular office hours, showing units, accepting resident applications, conducting move-ins/move-outs, receiving

repair calls and scheduling maintenance service, notifying tenants of past due rents, maintaining the property, cleaning up garbage, assisting Excel Development Group with annual NIFA inspections, notifying tenants of pest control spraying and other regular maintenance, assisting Excel Development Group with annual re-certifications,  and responding to tenant lock-outs.

10.     Arensdorf was also required to purchase and carry a cell phone with her at all times so that she could be contacted at any time regarding apartment matters. Arensdorf paid her cell phone bills and was never reimbursed by Excel Development Group for charges relating to apartment matters.

11.     Further, under the terms of the Contract for Services, Excel Development Group allowed Arensdorf to live rent free in the designated manager's unit.

12.     Excel Development Group did not have a written policy regarding the number of hours that Arensdorf was supposed to work.  However, Excel Development Group instructed Arensdorf to be present and work six (6) hours per week in the West Park Townhomes' main office.

13.     Excel Development Group also required Arensdorf to be on-call twenty-four (24) hours per day, seven (7) days per week to respond to West Park Townhomes' matters.

14.     During the time period of November 8, 2006 to July 17, 2007, on average, Arensdorf worked thirty (30) hours per week.  Arensdorf worked and kept West Park Townhomes' office open at least two (2) hours per day for a total of fourteen (14) hours per

3

week.  Arensdorf also spent three (3) hours per week walking around the property in order to clean up any trash and keep the property garbage free, as required of her under the terms of the Contract for Services Agreement.

15.    During the time period of November 8, 2006 to July 17, 2007, Arensdorf did not receive any compensation for performing and completing her resident managerial responsibilities.

16.    In addition, there was no express agreement between Excel Development Group and Arensdorf concerning her wages.  Excel Development Group never provided Arensdorf with any pay stubs or documentation showing her compensation and any deductions from her compensation for her work as resident manager.

17.    Arensdorf suffers from multiple sclerosis.

18.    On or about March 1, 2007, Nada Resnick-McNenny became Arensdorf's supervisor.  When Arensdorf met Ms. Resnick-McNenny, Ms. Resnick-McNenny stated: "I had to see how disabled you are."

19.    On or about July 1, 2007, Craig Larmon, President of Excel Development Group, sent a letter to Arensdorf notifying her that her employment was terminated effective July 17, 2007.

<u>FIRST CAUSE OF ACTION</u>
(Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111 <u>et</u> <u>seq</u>.)

20.    Arensdorf incorporates each and every allegation set forth in paragraphs 1 through 19 above, as if fully set forth herein.

21.     Excel Development Group is an employer as defined by 42 U.S.C. §12111(5).

22.     Arensdorf was an employee of Excel Development Group as defined by 42 U.S.C. §12111(4).

23.     Arensdorf is a "qualified individual with a disability" as defined by 42 U.S.C. §12111(8).

24.     Arensdorf is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job she held at Excel Development Group.

25.     Excel Development Group discriminated against Arensdorf in violation of 42 U.S.C. §12112 by terminating Arensdorf's employment because of her disability or perceived disability.

26.     Excel Development Group acted with malice and/or reckless indifference to Arensdorf's legal rights in terminating Arensdorf's employment because of her disability or perceived disability.

27.     Excel Development Group's violation of the Americans with Disabilities Act has proximately caused Arensdorf to suffer special damages consisting of lost wages in the amount of $5,770.50 from July 17, 2007 to the present date, in addition to general damages.  Arensdorf will continue to suffer lost wages in the future.

WHEREFORE, Arensdorf requests that judgment be entered in her favor for lost wages in the amount of $5,770.50 from July 17, 2007 to the present date, for future lost

income to be proven at trial, general damages, punitive damages, attorney's fees, for the costs of this action, and for such other and further relief as this Court may allow.

## SECOND CAUSE OF ACTION
(Fair Labor Standards Act, 29 U.S.C. §201 et seq.)

28.     Arensdorf incorporates each and every allegation set forth in paragraphs 1 through 19 above as if fully set forth herein.

29.     Excel Development Group is an employer as defined by 29 U.S.C. §203(d) of the Fair Labor Standards Act ("FLSA").

30.     Arensdorf was an employee of Excel Development Group as defined by 29 U.S.C. §203(e)(1).

31.     Arensdorf's managerial responsibilities were integral and indispensable parts of Arensdorf's principal activities as a resident manager for Excel Development Group and are compensable under the FLSA.

32.     Excel Development Group failed and refused to pay Arensdorf the applicable minimum wage rate pursuant to 29 U.S.C. §206(a).

33.     Arensdorf is owed unpaid minimum wages in the amount of $5,562.00 for her managerial responsibilities from November 8, 2006 to July 17, 2007.

34.     Due to Excel Development Group's willful failure to pay Arensdorf minimum wages for her work as a resident manager at West Park Townhomes, Arensdorf is entitled to unpaid minimum wages,  liquidated damages, attorney's fees in recovering the unpaid minimum wages, and for the costs of this action pursuant to 29 U.S.C. §216(b).

6

WHEREFORE, Arensdorf requests judgment against Excel Development Group for her unpaid minimum wages of $5,562.00 from November 8, 2006 to July 17, 2007, liquidated damages, an award of reasonable attorney's fees, for the costs of this action, and for such other and further relief as this Court may allow.

THIRD CAUSE OF ACTION

(Nebraska Fair Employment Practices Act, Neb. Rev. Stat.§§ 48-1101 et seq.)

35.     Arensdorf incorporates each and every allegation set forth in paragraphs 1 through 27 above, as if fully set forth herein.

36.     Excel Development Group is an employer as defined by Neb. Rev. Stat. §48-1102(2).

37.     Arensdorf was an employee of Excel Development Group as defined by Neb. Rev. Stat. §48-1102(7).

38.     Arensdorf is a "qualified individual with a disability" as defined by Neb. Rev. Stat. §48-1102(10)(a).

39.     Arensdorf is otherwise qualified, with or without reasonable accommodation, to perform the essential functions of the job she held at Excel Development Group.

40.     Excel Development Group discriminated against Arensdorf in violation of Neb. Rev. Stat.   §48-1104(1) by terminating Arensdorf's employment because of her disability or perceived disability.

41.     Excel Development Group's violation of Nebraska Fair Employment Practices Act has proximately caused Arensdorf to suffer special damages consisting of lost wages

7

in an amount of $5,770.50 from July 17, 2007 to the present date, in addition to general damages.  Arensdorf will continue to suffer lost wages in the future.

WHEREFORE, Arensdorf requests that judgment be entered in her favor for lost wages in the amount of $5,770.50 from July 17, 2007 to the present date, for future lost income in an amount to be proven at trial, general damages, attorney's fees, for the costs of this action, and for such other and further relief as this Court may allow.

TINA ARENSDORF, Plaintiff


By:  /s/ Patrick M. Flood
Patrick M. Flood, #19042
Emily L. Jung, #23080
HOTZ, WEAVER, FLOOD & BREITKREUTZ
444 Regency Parkway Drive, Suite 310
Omaha, Nebraska 68114
(402) 397-1140
(402) 397-1199 (facsimile)
Attorneys for Plaintiff

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a jury trial on all issues in North Platte, Nebraska.

TINA ARENSDORF, Plaintiff


By:  /s/ Patrick M. Flood
Patrick M. Flood, #19042
Emily L. Jung, #23080
HOTZ, WEAVER, FLOOD & BREITKREUTZ
444 Regency Parkway Drive, Suite 310
Omaha, Nebraska 68114
(402) 397-1140
(402) 397-1199 (facsimile)
Attorneys for Plaintiff

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Tina Arensdorf**
      **1821 Kristen Ct**
      **North Platte, NE 69101**

From:  **St Louis District Office**
        **Robert A. Young Bldg**
        **1222 Spruce Street**
        **Saint Louis, MO 63103**

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **32E-2007-00768** | **Joseph J. Wilson,** **Investigator** | **(314) 539-7816** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost.** (The time limit for filing suit based on a state claim may be different.)

[ ]  More than 180 days have passed since the filing of this charge.

[X]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

**James R. Neely, Jr.,**
**Director**

January 15, 2008
*(Date Mailed)*

Enclosures(s)

cc:  **Chief Executive Officer**
      **EXCEL DEVELOPMENT GROUP**
      **5101 Central Park Dr, Ste 100**
      **Lincoln, NE 68504**

**Patrick M. Flood**
**Hotz, Weaver, et al**
**444 Regency Pkwy Dr., Suite 310**
**Omaha, NE 68114**

EXHIBIT
tabbies"  "A"

## Contract For Services

1. This Contract For Services, hereinafter referred to as "Contract", is entered into by and between West Park Townhomes L.L.C., hereinafter referred to as "Company", and ~~Tina & Brad Arensdorf~~ hereinafter referred to as "Independent Contractor".

2. Services to be provided by Independent Contractor are:

   a) Maintain regular office hours
   b) Pass out brochures to maintain a waiting list
   c) Show units
   d) Take applications, collect copies of income and assets
   e) Conduct move-in/move-outs verified with photos
   f) Receive repair calls and schedule maintenance service/prepare work orders
   g) Respond to tenant lock-outs
   h) Change light bulbs and smoke alarm batteries as needed
   i) Quarterly change furnace filters and inspect units
   j) Assist property Management Company (EXCEL Development Group or its successor) with annual NIFA inspection
   k) Notify tenants of past due rents
   l) Walk the property weekly, keeping property garbage free
   m) If there is a community room, maintain calendar.
   n) Solicit bids for service contracts as directed by Management Company for lawn care, snow removal, painting, pest control, sanitation, carpet cleaning and other services
   o) Monitor mowing, lawn sprinkler usage, snow removal and general appearance
   p) Notify tenants of pest control spraying or other regular maintenance
   q) Unlock units as needed for regular maintenance and pest control spraying
   r) Assist Excel with annual re-certifications

3. The commencement date for services provided under this Contract is 11-8-06, hereinafter referred to as the "commencement date". Prior to, or within 30 days of the commencement date:

   a) Company shall conduct a criminal / character background check of the Independent Contractor. If unsatisfactory, this Contract will be terminated immediately.

   b) Independent Contractor will be tested for drugs and other intoxicating substances. If positive, this Contract will be terminated immediately. Independent Contractor shall also be subject to random testing for drugs and other intoxicating substances.

4. Effective on the Commencement Date, or other date as agreed to in writing, Independent Contractor will be allowed to live rent free in the designated Manager's Unit located at 142 East Prairie Ridge Road, North Platte, NE 69101. Upon termination of



**EXHIBIT**
tables* "B"

this Contract, Independent Contractor shall have 30 days to vacate the Manager's Unit, including all possessions.

5. It is understood that: a) the Independent Contractor is responsible for all self employment and income taxes; and b) the Independent Contractor is not covered under workers compensation insurance or benefit plans of the Development.

6. Either party may cancel this Contract by giving written notice ten working days prior to the effective date of cancellation. Immediate cancellation of this Contract will result upon: a) Violation of the terms of this Contract; and b) Failure by the Independent Contractor to perform his or her duties in a professional manner, and / or exhibit conduct, verbal or physical, which is unbecoming of a representative of the Company.

**Company:**

Excel Development Group

By: _____          Dated: 11-8-06

Title: Property Supervisor

**Independent Contractor:**

Tim & Bret Arensdorf

By: _____          Dated: 11-8-06

Title: _____